# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NIKKI MONTANO,

      Plaintiff,

v.                                    CIV 16-0977 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) filed on April 7, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On November 19, 2012, Ms. Nikki Montano (Plaintiff) protectively filed an application with the Social Security Administration for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Administrative Record[1] (AR) at 32, 83, 199. Plaintiff alleged a disability onset date of January 1, 2004. AR at 32, 199. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially

---

[1] Document 12-1 contains the sealed Administrative Record. *See Doc. 12-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR at 83-97) and on reconsideration (AR at 98-114). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her SSI application. AR at 133-35.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 58-82. ALJ Barry O'Melinn issued an unfavorable decision on March 4, 2015. AR at 29-57. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 27-28), which the council denied on June 29, 2016 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v.*

*Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ O'Melinn found that Plaintiff "has not engaged in substantial gainful activity since November 19, 2012, the application date . . . ." AR at 34 (citing 20 C.F.R. § 416.971). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease (DDD), obesity, history of bilateral carpal tunnel syndrome (CTS), tennis elbow, knee disorder, anxiety, depression and borderline intellectual functioning (BIF) . . . ." AR at 34 (citing 20 C.F.R. § 416.920(c)). The ALJ noted that Plaintiff's "impairments are severe, in combination if not singly, . . . in that [she] is significantly affected in the ability to perform basic work activities . . . ." AR at 34 (citing 20 C.F.R. §§ 416.920(c), 416.921(b)).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 34 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). In making his determination, ALJ O'Melinn considered whether Plaintiff's mental impairments met the "paragraph B" criteria. AR at

35-36. The ALJ found that Plaintiff has mild restrictions in her activities of daily living (AR at 36 – noting Plaintiff takes care of her four-year-old son, takes him to bus stop for school, prepares her own meals and household chores, uses public transportation, goes out alone, shops in stores for food, clothes, etc., pays bills and counts change, watches TV and reads) (citing AR at 227-30); moderate difficulties in the area of social functioning (AR at 36 – noting that Plaintiff reported "a fear of being in a crowd and that if she was with more than four people, she would have a panic attack and she would start to hyperventilate") (citing AR at 382), and she is afraid she will pass out and will have to flee crowds; moderate difficulties in the area of concentration, persistence or pace (AR at 36 – noting Plaintiff reported that she needs help with instructions due to depression and anxiety, can follow spoken instructions well, can pay attention for 20 minutes, and was only able to repeat one of three words at her consultative examination) (citing AR at 231, 383); and Plaintiff has experienced no episodes of decompensation of extended duration (AR at 36). Because the ALJ did not find that Plaintiff has at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, he determined that her mental impairments did not satisfy the "paragraph B" criteria (or the "paragraph D" criteria of listing 12.05). The ALJ also determined that Plaintiff did not meet the "paragraph C" criteria of 12.04 or 12.06. AR at 37. Finally, the ALJ determined that Plaintiff did not meet the "paragraph A," "paragraph B," or "paragraph C" criteria of 12.05. AR at 37 (citing AR at 226-27, 387).

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible . . . ." AR at 39. The ALJ thoroughly considered the

evidence of record as well as the opinions of Plaintiff's treating counselor, the

consultative psychologists and physicians, a nurse practitioner, and Plaintiff's friend,

Debbie Rael. AR at 38-50. Ultimately, the ALJ found that Plaintiff

> has the residual functional capacity to perform sedentary work as defined
> in 20 [C.F.R. §] 416.967(a)[,] except occasionally lift and/or carry up to ten
> pounds and frequently lift and/or carry less than ten pounds; stand and/or
> walk with normal breaks for a total of two hours in an eight hour workday;
> sit with normal breaks for a total of six hours in an eight hour workday;
> occasionally climb ramps or stairs, but never climb ropes, ladders or
> scaffolds; occasionally balance with the use of a handheld assistive
> device; can occasionally stoop, kneel, crouch, or crawl; she is limited to
> frequent reaching, handling and fingering, bilaterally; she is to avoid
> concentrated exposure to operational control of moving machinery and
> unprotected heights and hazardous machinery; the claimant can
> understand, carry out and remember simple instructions and make
> commensurate work related decisions; respond appropriately to
> supervision, coworkers and work situations; deal with routine changes in
> work setting; maintain concentration, persistence and pace for up to and
> including two hours at a time with normal breaks throughout the work day;
> work limited to simple, routine and repetitive tasks; suitable for jobs
> involving work primarily with things and not people.

AR at 37-38.

ALJ O'Melinn concluded that Plaintiff has no past relevant work (AR at 50 (citing

20 C.F.R. § 416.965)), but she is able to perform work as a Dowel Inspector, Nut Sorter,

and Laminator. AR at 51. The ALJ ultimately determined that Plaintiff "has not been

under a disability, as defined in the Social Security Act, since November 19, 2012 . . . ."

AR at 51 (citing 20 C.F.R. § 416.920(g)).

## III.  Legal Standard

The Court must "review the Commissioner's decision to determine whether the

factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.    Discussion

Plaintiff asserts three issues in her Motion. First, Plaintiff argues that the ALJ "failed to give proper reasons for rejecting the opinion of treating therapist Paul Weeks" who is a Licensed Professional Clinical Counselor (LPCC). *Doc. 18* at 1. Second,

Plaintiff contends that the ALJ "erred by failing to account for all of the moderate [l]imitations found by 96-6p non-examining psychologist Donald Gucker, Ph.D. . . ." *Id.* Third, Plaintiff alleges that "the Appeals Council failed to analyze the opinion of treating therapist Paul Weeks, LPCC whose opinion undercuts ALJ O'Melinn's RFC determination." *Id.* at 1-2.

## A. The ALJ adequately examined LPCC Weeks' opinion.

Plaintiff contends the ALJ's "reasons for rejecting LPCC Weeks' opinions are facially dubious and too vague." *Doc. 18* at 18. Plaintiff argues it was error for ALJ O'Melinn to discount LPCC Weeks' opinion because he was an "other source." *Id.* at 19-20. She also asserts that the ALJ's failure to specifically identify any alleged inconsistencies between LPCC Weeks' opinions and Plaintiff's testimony is error. *Id.* at 20-21.

The record establishes that Plaintiff received individual counseling at Valle del Sol (previously named Valencia Counseling Services) beginning in August 2011. *See* AR at 367. On July 11, 2014, LPCC Weeks reported that he had seen Plaintiff for weekly individual therapy for about three years. AR at 715. Relevant to Plaintiff's counseling with LPCC Weeks, the record that ALJ O'Melinn examined[2] contains eight "Treatment Plans,"[3] two "Assessment Updates,"[4] two "Clinical Assessments,"[5] one

---

[2] As discussed in Section IV(C), Plaintiff submitted several more records to the Appeals Council after ALJ O'Melinn's decision.

[3] The Treatment Plans are for the periods of February 22 through May 22, 2012 (AR at 367-69), May 23 through August 21, 2012 (AR at 370-72), August 22 through November 20, 2012 (AR at 373-75), November 21, 2012 through February 19, 2013 (AR at 376-78), February 20 through May 21, 2013 (AR at 436-38), May 22 through August 20, 2013 (AR at 439-41), May 15, 2014 (AR at 830-32, 859-61), and September 25, 2014 (AR at 827-29, 863-65).

"Diagnosis Review,"[6] one "Individual Service Plan,"[7] and one "Medical Opinion Questionnaire (Mental Impairments)."[8]

ALJ O'Melinn summarized several of LPCC Weeks' treatment notes and the Medical Opinion Questionnaire (Mental Impairments). The ALJ noted that during an April 18, 2013 Assessment Update, LPCC Weeks

> noted and observed that [Plaintiff's] appearance was unkempt and her posture was slumped. Her attitude was cooperative and her behavior was agitated. Her speech was rapid and slow. Her mood was euthymic and her affect was anxious. Her thought content was unremarkable and her thought processes were organized, rationale [sic], and concrete. Her recent and remote memories were intact and she was oriented to date, person, place and situation. Her attention was low and her insight and judgment were poor. Mr. Weeks noted that [Plaintiff] was stable and sober for over one year. She had quit smoking four months ago and her memories were returning. She had quit smoking but was presently gaining weight.

---

[4] The "Assessment Updates" from Valencia Counseling Services, dated October 16, 2012, and April 18, 2013, are essentially fill-in-the-blank forms, with a multiple choice section for the counselor to provide an update on the client's "Life Domains Score" (i.e., whether the Psychiatric, Medical, Interpersonal, Financial, etc. is Significantly Improved, Improved, Unchanged, Worsened, or Significantly Worsened), checkbox sections for a "Mental Status Exam" and "Legal and Substance Abuse" (i.e., to assess Appearance, Posture, Attitude, Mood, Thought Content, Memory, etc.), and a scoring section for "severity ratings" and "ASI Composite Scores." AR at 357-60, 428-31.

[5] The "Clinical Assessments" from Valle del Sol, dated October 16, 2013, and April 29, 2014, are also fill-in-the-blank forms, but they provide more space for the counselor to write, rather than simply check boxes or select from multiple choice options. AR at 808-16, 817-26, 883-90.

[6] The Diagnosis Review, dated May 24, 2013, lists Plaintiff's "presenting problem" (anxiety) and allows the counselor to summarize symptoms, issues, and other relevant factors for each of the diagnostic axes. AR at 434-35.

[7] The Individual Service Plan, dated October 16, 2013, identifies patient objectives, needs, etc. AR at 833-34.

[8] The Medical Opinion Questionnaire allowed LPCC Weeks to list the "[n]ature, frequency and length of [his] contact" with Plaintiff, her diagnoses and prognosis, followed by a multiple choice form on which he marked "unlimited or very good," "good," "fair," or "poor or none" for 25 different skills. AR at 715-17.

AR at 40 (citing AR at 428-29). The Court notes that LPCC Weeks' April 18, 2013 observations and notes are almost identical to those he made on October 16, 2012. *Compare* AR at 357-58, *with* AR at 428-29.

The ALJ discussed a May 24, 2013 Diagnosis Review that Mr. Weeks had completed. AR at 41 (citing AR at 434-35). LPCC Weeks noted that Plaintiff's presenting problem was anxiety, and her symptoms included "sudden attacks of anxiety, difficulty breathing, rapid heartbeat, racing thoughts[, and] lack of focus." AR at 41 (citing AR at 434). Plaintiff's diagnosis is Generalized Anxiety Disorder. AR at 41 (citing AR at 434). LPCC Weeks "noted that [Plaintiff] had no income but she was working to get her GED. . . . [Plaintiff] was friendly and articulate and she worried that she was going crazy, but she was not." AR at 41 (citing AR at 434-35). Mr. Weeks determined that the claimant had a Global Assessment of Functioning (GAF) score of 70. . . ."[9] AR at 41 (citing AR at 434).

ALJ O'Melinn detailed LPCC Weeks' April 29, 2014 Clinical Assessment of Plaintiff. AR at 43. LPCC Weeks "noted [Plaintiff] had been a long time heroin user but she had been sober for 14 years, she also had been sober from alcohol for 9 months. She had quit smoking two years ago." AR at 43 (citing AR at 808). Plaintiff, who "struggle[s] with depression, anxiety and anger issues[,]" has eight children, but only her youngest lives with her. AR at 43 (citing AR at 808).

> Mr. Weeks noted and observed that [Plaintiff] appeared disheveled and she had on casual attire. Her behavior was within normal limits and she had adequate speech. Her mood was euthymic and her affect was

---

[9] A GAF "score of 70 indicates some mild symptoms or some difficulty in social, occupation[al] or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships . . . ." AR at 41 (citing Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed. 2000)).

> appropriate. Her thought processes were logical and her thought content was normal. Her concentration was good and insight and judgment were fair. [Plaintiff] was diagnosed with bipolar 1 disorder, most recent episode depressed moderate worse.

AR at 43 (citing AR at 814). LPCC Weeks assessed Plaintiff's GAF score at a 55, which "indicates moderate symptoms or moderate difficulty in social, occupation[al] or school functioning. AR at 43 (citing DSM-IV 34). Mr. Weeks also "noted that [Plaintiff] responded well to her medications." AR at 43; *see also* AR at 815.

Finally, the ALJ detailed LPCC Weeks' opinions contained in the July 11, 2014 Medical Opinion Questionnaire (Mental Impairments). AR at 47-48 (citing AR at 715-17). The ALJ noted that Mr. Weeks had been seeing Plaintiff "for about three years for therapy and medication management, and presently he was doing weekly individual therapy . . . ." AR at 47 (citing AR at 715). LPCC Weeks "noted that [Plaintiff] had been diagnosed with bipolar 1 disorder, most recent episode depressed[,]" but she "was making good progress with her prognosis." AR at 48 (citing AR at 715). Mr. Weeks assessed Plaintiff's "mental abilities and aptitude needed to do any job." AR at 715-17 (capitalization omitted). The questionnaire lists 25 skills with a ranking system of "unlimited or very good," "good," "fair," or "poor or none." AR at 715-17. Mr. Weeks ranked Plaintiff on the bottom two levels – "fair" or "poor or none" – for all 25 skills. AR at 715-17. The ALJ commented on several of these:

> Mr. Weeks noted that [Plaintiff's] ability to interact appropriately with the general public was fair to poor and that her ability to remember work-like procedures was poor. He further determined that [Plaintiff's] ability to understand and remember very short and simple instructions was poor or none and her ability to carry out very short and simple instructions was poor or none. Her ability to sustain an ordinary routine without special supervision was poor or none and her ability to ask simple questions or request assistance was fair.

AR at 48 (citing AR at 715-17). ALJ O'Melinn also focused on Mr. Weeks' opinions that Plaintiff "had made good progress toward her treatment goals" but "continued to have difficulty with her attention and managing her anxiety and depression." AR at 48 (citing AR at 717). Mr. Weeks also opined that Plaintiff would miss more than two days of work per month. AR at 717.

The ALJ gave "little weight" to LPCC Weeks' opinion. AR at 47. He found that while "Mr. Weeks has a longitudinal history with [Plaintiff], under [SSR] 06-03p, a counselor is not considered an 'acceptable' medical source . . . ."AR at 48; *see also* Soc. Sec. Ruling, SSR 06-03p, Titles II and XVI: II and XVI: Considering Opinions and Other Evidence from Sources who are not 'Acceptable Medical Sources' in Disability Claims, 2006 WL 2329939 (Aug. 9, 2006). The ALJ further found that Mr. Weeks' "report appears to contain inconsistencies with [Plaintiff's] testimony, and therefore his opinion is rendered less persuasive and given little weight." AR at 48; *see also* SSR 06-03p, 2006 WL 2329939, at *2.

Plaintiff has two broad complaints about how ALJ O'Melinn assessed Mr. Weeks' testimony. First, Plaintiff argues it was error for the ALJ to discount LPCC Weeks' opinion simply because he was an "other source." *Doc. 18* at 18-20. Plaintiff points out that an "other source" opinion may be entitled to more weight than an "acceptable medical source" regarding the severity and degree of a claimant's limitations. *Id.* at 19 (citing 20 C.F.R. § 416.913(a); *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007); SSR 06-03p, 2006 WL 2329939).

In *Frantz*, the plaintiff had received treatment for bipolar disorder, anxiety, and migraine headaches. 509 F.3d at 1300. The plaintiff "never had a treating physician[,]" rather, "a large part of her medical history [was] comprised of reports from . . . a clinical nurse specialist (CNS)[,]" which is not an "acceptable medical source" under SSR 06-03p. *Id.* at 1300-01. The ALJ in *Frantz* disregarded the CNS's "medical opinion in favor of opinions from two examining physicians who each saw [the plaintiff] only once and who each considered a particular aspect of [her] condition and found her to be capable of work, despite not having considered all of her impairments in combination." *Id.* at 1301. The Tenth Circuit reversed, noting that the ALJ referred to some of the CNS's treatment notes "but did not discuss what weight he gave to her opinion on the severity of [the plaintiff's] limitations and on the functional effect those limitations have on her overall ability to work." *Id.* at 1302. The ALJ also "ignored evidence from [the CNS] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability." *Id.* The Tenth Circuit reiterated that an ALJ must discuss both the evidence that supports his decision, as well as the "uncontroverted evidence he chooses not to rely upon [and the] significantly probative evidence he rejects." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (internal citations omitted)).

The facts in *Frantz* are distinguishable from those here. First, ALJ O'Melinn did not fail to assign a weight to LPCC Weeks' opinion; he gave it little weight and he discussed his reasoning. AR at 47-48. Nor did the ALJ ignore evidence from LPCC Weeks that supported a finding of disability – he detailed several of the counselor's

records and his opinions on the Medical Questionnaire in depth, including those that supported a finding of disability. AR at 40-48.

Moreover, the Court finds ALJ O'Melinn satisfactorily (albeit somewhat minimally) addressed the factors ALJs are to consider when weighing "other source" opinions:

> Opinion evidence from "other sources" is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in [SSR] 06-03p . . . . These factors include:
>
> [1.] How long the source has known and how frequently the source has seen the individual;
> [2.] How consistent the opinion is with other evidence;
> [3.] The degree to which the source presents relevant evidence to support an opinion;
> [4.] How well the source explains the opinion;
> [5.] Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> [6.] Any other factors that tend to support or refute the opinion.

*Knight v. Astrue*, 388 F. App'x 768, 772 (10th Cir. 2010) (quoting SSR 06-03p, 2006 WL 2329939, at *4-5).

With respect to the first and fifth factors, the ALJ noted that Plaintiff had been seeing Mr. Weeks, a Licensed Professional Clinical Counselor, weekly for individualized therapy and medication management. AR at 47 (citing AR at 715). Regarding the third and fourth factors, the ALJ detailed several of Mr. Weeks' assessment reports as well as his Medical Questionnaire. AR at 40-48. The Court finds it worth mentioning that the record treatment notes and assessments from LPCC Weeks are somewhat lacking in substance – they are largely comprised of fill-in-the-blank type forms with more boxes checked than original notes and observations recorded. *See*, *e.g.*, *infra* at nn. 3-8. With respect to the second factor, the ALJ noted that Mr. Weeks' report was inconsistent with

Plaintiff's testimony. AR at 48. In sum, the ALJ's treatment of LPCC Weeks' opinion was adequate.

Plaintiff also argues that the Court should remand because ALJ O'Melinn failed to specify how LPCC Weeks' opinion was inconsistent with Plaintiff's testimony. As the Commissioner notes in her Response, Plaintiff's "testimony" includes more than what she said at the hearing, it also includes her own self-reports. *Doc. 19* at 8. The ALJ considered Plaintiff's self-reports in his analysis. *See* AR at 36-39 (citing AR at 226-31). Although ALJ O'Melinn did not outline those inconsistencies in the same paragraph as his finding on LPCC Weeks' opinion, they are apparent throughout his thorough recitation of the evidence. AR at 40-48.

For example, LPCC Weeks' opinion that Plaintiff had "poor or no" ability to "carry out very short and simple instructions" or "remember work-like procedures" (AR at 716) is inconsistent with Plaintiff's report that she obtained a driver's license and can take care of her son, her own basic daily needs, and her bills (*see* AR at 39, 69-70, 226-31). Moreover, when given the opportunity on her Function Report to note that her illnesses or conditions affect her abilities to complete tasks, understand, or follow instructions, Plaintiff specifically chose not to mark those abilities as things affected by her conditions. AR at 231. LPCC Weeks also marked that Plaintiff has a fair or poor ability to interact appropriately with the general public and a fair ability to maintain socially appropriate behavior. AR at 715. Contrary to this opinion, Plaintiff did not note on her Function Report that her illnesses or conditions affect her ability to get along with others, and she specifically selected the option to establish that she does *not* have problems getting along with family, friends, neighbors, or others. AR at 231. It is

interesting that LPCC Weeks also noted Plaintiff has "normal social interactions" during an April 29, 2014 visit. AR at 810. In summary, the Court finds that the ALJ adequately detailed how LPCC Weeks' opinion was inconsistent with Plaintiff's testimony. The Court will deny Plaintiff's Motion on this issue.

**B.** **The ALJ adequately accounted for all of Dr. Gucker's moderate limitations in the RFC.**

Plaintiff next argues the ALJ did not account for eight moderate limitations that Dr. Gucker, a DDS non-examining psychologist, attributed to Plaintiff. *Doc. 18* at 22-23. Plaintiff also contends that there is no basis in the record for "Dr. Gucker's opinion that Ms. Montano retained the ability to perform simple, repetitive tasks when she is compliant with treatment and medication." *Id.* at 23.

On April 25, 2013, Dr. Gucker completed a Psychiatric Review Technique (PRT) and a Mental Residual Functional Capacity (MRFC) Assessment and ultimately determined that Plaintiff "was 'not disabled' and could work at the sedentary exertional level." *See* AR at 47 (citing AR at 96-97). ALJ O'Melinn gave "great weight" to Dr. Gucker's opinion. AR at 47.

As described in authority from this district and the Tenth Circuit, the MRFC Assessment has two relevant sections: in the first section (Section One), the author is instructed to answer a series of questions to "help determine the individual's ability to perform sustained work activities." *See* AR at 93. The author then rates the level of each limitation. *See* AR at 93-95. In the third section (Section Three), the author is instructed to provide a narrative explanation of the limitations indicated. *See* AR at 93-95. The form explains that "the actual mental residual functional capacity assessment is

15

recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." AR at 93.

In Plaintiff's case, Dr. Gucker found in Section One that Plaintiff had moderate limitations in nine different abilities. AR at 93-95. Plaintiff contends that the ALJ failed to account for eight of those nine abilities:

- understand and remember detailed instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number and length of rest periods;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- respond appropriately to changes in the work setting; and
- set realistic goals or make plans independently of others.

AR at 93-95. Plaintiff argues that this failure constitutes reversible error. *Doc. 18* at 22-24.

It is true that an ALJ errs where he "accept[s] some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but reject[s] others without discussion." *Frantz*, 509 F.3d at 1302-03. The Tenth Circuit has clarified, however, that the Section One limitations "serve[] only as an aid to [the] assessment of the [RFC]." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). The Tenth Circuit instructs courts to compare the ALJ's RFC findings to the psychologist's MRFC narrative, not to the "notations of moderate limitations." *Id.*

In Section Three, the MRFC narrative, Dr. Gucker explained, "[r]egarding mental issues only, the claimant when [therapy] and medication compliant, retains the ability to

perform simple, repetitive tasks in spite of the moderate limitations noted above." AR at 95. Dr. Gucker also directed the reader to see his "extensive case discussion in [the] PRT." AR at 93-95. In the PRT, Dr. Gucker determined Plaintiff "was mildly limited in her activities of daily living and social functioning and . . . moderately limited in maintaining her concentration, persistence or pace." AR at 47 (citing AR at 89).

In the "Additional Explanation" section, Dr. Gucker detailed the record evidence he considered in completing the forms. AR at 89-90. The records included:

(1) an April 16, 2013 Consultative Examination Report and Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV) with N. Phoenix Anderson, Ph.D. AR at 90, 386-88.

> [Dr. Anderson] reported that from a cognitive standpoint[,] work-related abilities are defined as:
> no issues with understanding and remembering simple instructions, no issues with carrying out simple instructions, no issues in the ability to make judgments on simple work related decisions, and a moderate level of functional impairment in regard to understanding and remembering complex instructions, carry out complex instructions, and the ability to make judgments on complex work related decisions. No functional impairments were noted with regard to capability for interaction with the general public, interaction appropriately with supervisors, and interaction appropriately with coworkers. Moderate functional impairments were noted in terms of responding appropriately to usual work-related situations and to changes in a routine work setting.

AR at 90; *see also* AR at 386-88.

(2) a March 19, 2013 Consultative Examination Report with Finian J. Murphy, Ed. D. AR at 90, 380-83. Dr. Gucker noted that some of Dr. Murphy's conclusions (i.e., regarding marked limitations to carry out instructions and concentrate and persist at tasks) are "not supported by the current WAIS-IV data and [Dr. Anderson's] conclusions

. . . ." AR at 90. Dr. Gucker also noted that, in contrast to Dr. Murphy's findings, one of Plaintiff's WAIS-IV scores reflected a "capability for abstract reasoning." AR at 90.

(3) an October 16, 2012 Assessment Update from LPCC Weeks. AR at 90, 357-59. Mr. Weeks' check-the-box examination revealed that Plaintiff was "cooperative, rapid speech, mood euthymic, affect anxious, thought content unremarkable, thought process organized, memory intact, full orientation, attention low, insight poor." AR at 90, 358. Dr. Gucker noted that Mr. Weeks is a "nonacceptable source." AR at 90.

(4) an October 19, 2012 treatment note from Lyn Dawson, CNP, at ABQ Health Partners, who saw Plaintiff for complaints of pain and noted, "psychological: no mood changes specified." AR at 90, 275-76 (capitalization omitted).

(5) Dr. Gucker's observation that there is no evidence Plaintiff has had inpatient mental treatment. AR at 90.

(6) a January 21, 2013 Third Party Function Report from Plaintiff's friend, Debbie Rael. AR at 90, 215-22. Dr. Gucker observed that Plaintiff's personal care limitations appear to be physically-based and noted Ms. Rael's statement that Plaintiff's pain causes depression. AR at 90, 217. Dr. Gucker listed the following from Ms. Rael's report: "Prepares simple meals, does light cleaning, limited by pain . . . , uses public transportation, denies driving, shops in stores, and manages money. Watches TV and reads." AR at 90, 217-19. Plaintiff visits with friends and family who check on her in her home on a daily basis. AR at 90, 219. "Does not need reminders to go places. In section C [Ms. Rael] only endorses concentration in terms of mental limitations" due to depression and anxiety. AR at 90, 220. Dr. Gucker states that the WAIS-IV "data suggest a moderate degree of limitation at most in terms of concentration." AR at 90.

Dr. Gucker's narrative explanation sheds light on his list of moderate limitations. He explained that the evidence warrants a moderate limit "*at most* in terms of concentration" and tempered his list of moderate restrictions on social functioning by noting Dr. Anderson's finding of "[n]o functional impairments . . . with regard to capability for interaction with the general public, [and] interaction appropriately with supervisors" and coworkers. AR at 90 (emphasis added).

The Court finds that the ALJ's RFC findings adequately capture Dr. Gucker's moderate limitations as expressed in the narrative portion of the form. While ALJ O'Melinn did not repeat Dr. Gucker's Section One moderate limitations verbatim, the RFC limitations incorporate those limits. Specifically, the ALJ's recognition that Plaintiff may "understand, carry out and remember simple instructions and make commensurate work related decisions[,]" "deal with routine changes in [a] work setting[,]" and is "limited to simple, routine and repetitive tasks" incorporates Dr. Gucker's limitations related to Plaintiff's abilities regarding understanding detailed instructions, responding appropriately to changes, and setting realistic goals or independently planning. AR at 38, 93-95. *See also Smith*, 821 F.3d at 1268-69 (noting that the ALJ's assessment that plaintiff "could not engage in face-to-face contact with the public and . . . only [in] simple, repetitive, and routine tasks" adequately accounted for the consultative examiner's finding of moderate limitations in, among other areas, the plaintiff's ability to "respond appropriately to changes in the workplace, and set realistic goals or independently plan"). The ALJ's findings related to simple tasks, as well as his finding that Plaintiff may "maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the work day" accounts for Dr. Gucker's limits

related to Plaintiff's abilities to maintain attention for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, and complete a normal workday and workweek. AR at 38, 93-95. Moreover, these findings reflect Dr. Gucker's narrative explanation related to Plaintiff's ability to perform daily activities and her moderate limitation *at most* in terms of concentration. AR at 90. This is also in line with the Tenth Circuit's finding in *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), that "an RFC limiting the claimant to unskilled work adequately addressed the claimant's moderate problems with concentration, persistence, and pace." *See Shelton v. Colvin*, 663 F. App'x 690, 695 (10th Cir. 2016) (discussing *Vigil* and citing *Smith*, 821 F.3d at 1268-69, for the proposition that a "psychologist's notations of moderate limitations serve only as an aid to the ALJ's RFC assessment").

Finally, the ALJ's finding that Plaintiff may "respond appropriately to supervision, coworkers and work situations" and is "suitable for jobs involving work primarily with things and not people" adequately reflects Dr. Gucker's limits, as well as his narrative notes that Dr. Anderson found "[n]o functional impairments" related to Plaintiff's "capability for interaction with the general public, . . . supervisors, . . . [and] coworkers." AR at 38, 90, 93-95. Plaintiff "has not pointed to any evidence, nor can the Court find any, that the ALJ rejected" any of Dr. Gucker's moderate limitations as explained in the narrative section. *See Herrera v. Berryhill*, CIV 16-0824 KK, 2017 WL 4155348, at *11 (D.N.M. Sept. 14, 2017) (discussing *Smith*).

In summary, ALJ O'Melinn adequately accounted for the moderate limitations in Section One of the MRFC Assessment.[10] This finding is bolstered by Dr. Gucker's own narrative explanation, noting that Plaintiff "retains the ability to perform simple, repetitive tasks in spite of the moderate limitations noted above."[11] AR at 95. *See Paulsen v. Colvin*, 665 F. App'x 660, 666-67 (10th Cir. 2016) (finding "there was no need for the ALJ to repeat the moderate limitations assessed by the [consultative examiner] because the effects of the limitations were explained in [the] narrative, which limited [the plaintiff] to unskilled work with limited social interactions").

Plaintiff makes a very brief argument regarding Dr. Gucker's opinion that Plaintiff "retain[s] the ability to perform simple, repetitive tasks when she is compliant with treatment and medication." *Doc. 18* at 23 (citing AR at 47, 95). Plaintiff alleges that "[t]his conclusion has no basis in the record of evidence and appears to be based on speculation." *Id.* The Court finds that substantial record evidence supports this finding. For example, Mr. Weeks noted in April 2014 that Plaintiff "responds well to medications" (AR at 815), and Plaintiff reported at the hearing that medications do help her "some" (AR at 75). More importantly, the Court finds that the ALJ's RFC finding is supported by substantial evidence. Plaintiff's Motion is denied on this issue.

---

[10] While Dr. Gucker noted eight moderate limitations in Section One of the MRFC Assessment, he also concluded in the PRT that Plaintiff has only *mild* restrictions of activities of daily living and in maintaining social functioning, and *moderate* restrictions only in maintaining concentration, persistence or pace. AR at 89. ALJ O'Melinn found Plaintiff had even greater limitations at Step Three, in that he concluded she had *moderate* limitations in the areas of both social functioning and in maintaining concentration, persistence or pace. AR at 36.

[11] This finding does not conflict with the Tenth Circuit's decisions in *Frantz v. Astrue*, 509 F.3d at 1302-03, or *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007), because the Court does not find that the ALJ *rejected* any of Dr. Gucker's moderate limitations.

**C.** **Plaintiff's newly submitted evidence is insufficient to impact Plaintiff's RFC.**

Plaintiff contends that the ALJ's decision is no longer supported by substantial evidence due to the new medical records she submitted to the Appeals Council. *Doc. 18* at 24-26. The new evidence relevant to this Motion consists of a May 21, 2015 Medical Assessment of Ability to do Work-Related Activities (Mental), 12.04 Affective Disorders, and 12.06 Anxiety Related Disorders completed by Mr. Weeks (AR at 854-57), four Treatment Plans dated February 19, 2015, May 6, 2015, August 7, 2015, and February 11, 2016 (AR at 867-82), and a Clinical Assessment dated February 11, 2016 (AR at 893-903).

"When a claimant submits new evidence to the Appeals Council and the Council accepts that evidence, it becomes part of the administrative record . . . ." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994)). Because the Appeals Council did not grant review, the Court must perform a "substantial-evidence review." *Id.* (citing *O'Dell*, 44 F.3d at 858-59).

The Court begins its review by considering the Medical Assessment of Ability to do Work-Related Activities form completed by Mr. Weeks. In this assessment, Mr. Weeks opined that Plaintiff has the following moderate limitations: understand and remember very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, work in coordination with/or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychological [sic]

based symptoms and . . . perform at a consistent pace without unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR at 854-56. Mr. Weeks opined that Plaintiff has marked limitations in her ability to understand and remember detailed instructions. AR at 854. Mr. Weeks also opined that Plaintiff has "marked restriction of activities of daily living" under both 12.04 (affective disorders) and 12.06 (anxiety-related disorders), and marked difficulties in maintaining concentration, persistence, or pace under 12.04. AR at 856-57. Mr. Weeks stated that Plaintiff has a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." AR at 856.

As discussed above, opinion evidence from "other sources" is evaluated using the factors outlined in 20 C.F.R. § 416.927(d). *See* SSR 06-03p, 2006 WL 2329939, at *4-5. There is little new to note on the first factor: presumably, Plaintiff is still seeing Mr. Weeks for weekly counseling sessions, but that is not clear from the new evidence. *See id.* at *4. With respect to the third factor, the Court compared the four newly submitted Treatment Plans (AR at 867-82), which are almost identical to each other,[12] to the most recent Treatment Plan ALJ O'Melinn examined from September 25, 2014 (AR at 827-29). All five Treatment Plans describe Plaintiff's goal as to "[r]educe the significant impairment caused by [d]epression. In [Plaintiff's] own words: I want to feel less sad and

---

[12] Other than the appointment date and time differences in the new Treatment Plans, they are identical save for a single sentence: the two most recent Treatment Plans include "Family Strengths: Parental involvement, family members care about each other, extended family support, enjoys activities together, transportation, eats meals together and safe and stable housing." AR at 875, 879. The other two newly submitted Plans do not include this sentence. AR at 867, 871.

get along better with my kids." AR at 827, 868, 872, 876, 880. In the four newly submitted treatment plans, there is additional information under the "goal" section: Plaintiff "would like help with the following: [s]chool, computer class, GED"; the barriers to her goals are "nothing anymore, a bad tire on my car, money"; and her ideas to help her with the barriers are to "[a]pply for disability, work on resume, find a part time job." AR at 867, 871, 875, 879. She also states that she wants "to continue to work on staying stable so that [she] can be a better mom to [her] son." AR at 868, 872, 876, 880.

Two of the "objectives" are essentially identical on all five Treatment Plans: Plaintiff is to "[p]ractice coping strategies to reduce anxiety" and "take medications to help alleviate depression, irritability, and anxiety issues." AR at 827, 868, 872, 876, 880. The four recent Treatment Plans add another objective related to coping strategies for reducing anxiety, and a fourth on building "living skills by accessing ccss services." AR at 868, 872, 876, 880. Five of the six "interventions" are identical on all five Treatment Plans, the four recent Plans add a sixth intervention related to teaching "skills to promote effective communication and interaction." AR at 827-28, 868, 872, 876, 880. The "Discharge Plan," which is identical on all but the most recent Plan, curiously notes that "Nikki *may* need ongoing med management." AR at 828, 869, 873, 877 (emphasis added). The February 11, 2016 Plan omits this note; however, where the previous four Plans did not include a "discharge date" (*see* AR at 828, 869, 873, 877), this Plan lists the "projected discharge date" as February 15, 2017, and notes there are "no barriers to discharge." AR at 880-81. This note by itself seems inconsistent with LPCC Weeks' opinion regarding the many moderate and marked restrictions on Plaintiff's abilities.

The Court also compared the most recent Clinical Assessment dated February 11, 2016, to the April 29, 2014 Clinical Assessment that ALJ O'Melinn examined. *See* AR at AR at 43, 808-16, 893-903. The first page of these two documents are almost identical, despite the fact that two years separates them. AR at 808, 893. While Plaintiff's age is updated in the 2016 Clinical Assessment, the remaining information is unchanged, including the ages of her children and the amount of time she has been sober. AF at 808, 893. While the form itself changed slightly from 2014 to 2016, the answers to the unchanged portions (i.e., the "Current Symptom Checklist," "Symptoms & Problems," "Emotional/Psychiatric History," etc.) are identical on both forms. AR at 808-16, 893-903. The only significant difference in the two forms is the assessment of the "[h]ighest GAF in the past year," which LPCC Weeks assessed as 60 in 2014, and 55 in 2016. AR at 815, 901. The five-point drop is not explained in the form or elsewhere, nor is the drop supported by the new records, as they are almost identical to records from 2014.

Ultimately, the Court finds the newly submitted records (the Treatment Plans and Clinical Assessment) add very little to the record. They are similar, if not identical, to the same documents that ALJ O'Melinn examined. If anything, Plaintiff's expanded "goals" and "discharge plan" in the recent Treatment Plans reflect a more positive outlook and provide even more support for ALJ O'Melinn's decision.

Regarding the fourth factor, LPCC Weeks provided very little explanation on the Medical Assessment of Ability to do Work-Related Activities form. *Id.* His comments included the following notes:

- "Nicki [sic] gets frustrated – tries to do many things at once and loses her patience easily." AR at 854.
- "Nicki [sic] gets along with general public at clinic. Nicki [sic] reports she gets anxious when her medications have not been consistent." AR at 855.
- "Nicki [sic] feels like she adapts to change and to the environment well. This seems to be true." AR at 855.
- "avoids birthday parties and big crowds" AR at 857.

These comments provide very little of substance to support his findings. For example, the ALJ found no evidence that Plaintiff had one "or more years' inability to function outside a highly supportive living arrangement," Plaintiff failed to submit any new evidence to show such a "highly supportive living arrangement," yet Mr. Weeks confusingly opined that Plaintiff has a current history of this inability. *See* AR at 37, 856. The Court also notes that many of the moderate limitations Mr. Weeks noted mirror those found by Dr. Gucker. AR at 93-95, 854-57. Yet, Mr. Weeks provided no substantive commentary or evidence that gives the Court a reason to deviate from Dr. Gucker's previous analysis of these limitations.

Finally, with respect to the second factor, Mr. Weeks' opinion is not fully consistent with the other record evidence. Mr. Weeks assigned marked limitations to Plaintiff's ability to carry out detailed instructions, which is inconsistent with Dr. Anderson's and Dr. Gucker's findings that Plaintiff has only moderate limitations in this area. AR at 93, 388, 854. Mr. Weeks opined that Plaintiff has marked restrictions of activities of daily living and in maintaining concentration, persistence, or pace, which is inconsistent with Plaintiff's own testimony as discussed above in Section IV(A).

Thus, the Court finds that the newly submitted evidence does not change the ALJ's decision. Substantial evidence still supports ALJ O'Melinn's RFC determination. The Court will deny Plaintiff's Motion.

**V.     Conclusion**

The Court finds that the ALJ sufficiently detailed how LPCC Weeks' opinion was inconsistent with Plaintiff's testimony, and the RFC findings adequately capture Dr. Gucker's moderate limitations. The Court has reviewed the record as a whole, including Plaintiff's newly submitted evidence, and determined that substantial evidence supports ALJ O'Melinn's decision.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) is **denied**. The Court will enter a final order pursuant to Rule 58 of the Federal Rules of Civil Procedure affirming the decision of the Acting Commissioner and dismissing this action with prejudice.


_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent